UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV12-00684 JAK (RZx) | Date | February 4, 2013 |
|---|---|---|---|
| Title | Dennis Morris v. Thierry Guetta, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Andrea Keifer | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 47) AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION RE COPYRIGHT INFRINGEMENT AS TO ALL DEFENDANTS (DKT. 49)

### I.     Introduction

Plaintiff Dennis Morris is a photographer. His First Amended Complaint ("FAC") alleges that Defendant Thierry Guetta ("Guetta") and Defendant It's a Wonderful World, Inc. ("IAWW") (collectively, "Defendants") infringed Plaintiff's copyright in a photograph of the Sex Pistols bassist Sid Vicious (the "Photograph"), by copying the Photograph and using it to make other artworks. Plaintiff brings a single claim of copyright infringement under 17 U.S.C. § 101 *et seq.* FAC, Dkt. 41.

Plaintiff and Defendants have brought separate motions for summary adjudication. Plaintiff moves for summary adjudication on the issue of copyright infringement, contending that there is no genuine issue of material fact that Defendants' works infringed his copyright in the Photograph. Dkt. 49. Defendants move for summary judgment, contending that there is no genuine issue of material fact that their works reflect a protected fair use of the Photograph. Dkt. 47. The Court heard oral argument on all of these matters on October 22, 2012, and took them under submission. Dkt. 61. For the reasons stated in this Order, the Court DENIES Defendants' motion and GRANTS Plaintiff's motion.

### II.    Factual Background

In 1977, Plaintiff photographed Sid Vicious. *See* Plaintiff's Response to Defendants' Statement of Uncontroverted Facts ("PRSUF") ¶¶ 1-4, Dkt. 56-1. The Photograph, which is in black and white, shows Sid Vicious tilting his head and winking. *See* Defendants' Response to Plaintiff's Statement of Uncontroverted Facts ("DRSUF") ¶ 1, Dkt. 54-2. It is undisputed that Sid Vicious struck a pose of his own design for the Photograph. PRSUF ¶ 4. Plaintiff states that he took the Photograph in Sweden, but did not register the copyright in the United States. PRSUF ¶ 3. The Photograph has been published on the Internet and was included in a book Plaintiff published about the Sex Pistols. PRSUF ¶¶ 6-7. Plaintiff has also presented evidence that the Photograph was shown at a gallery in London in 2004 and that, in connection with that showing, prints of it were sold. Morris Decl. ¶ 3, Dkt. 58.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV12-00684 JAK (RZx) | Date | February 4, 2013 |
|---|---|---|---|
| Title | Dennis Morris v. Thierry Guetta, et al. | | |

Defendant Guetta is an "appropriation artist" whose pop art pieces include modified pictures of celebrities. Guetta admits that he created the seven artworks at issue in this action. Guetta Decl. ¶ 2, Dkt. 60-1; DRSUF ¶¶ 4-10. He states that he "altered" the Photograph when he created his works. Defendants' Responses to Plaintiff's First Set of Interrogatories No. 1, Dkt. 57-1. Generally, these seven works feature Sid Vicious tilting his head and winking. The image of Sid Vicious in some of Guetta's works features a higher black and white contrast, with less of a greyscale than in the Photograph. PRSUF ¶¶ 23-24. These works look as if they were created with a stencil; they have less subtle detail than the Photograph. Certain of Defendants' other works that are at issue bear a greater similarity to the Photograph in that they have less of a black and white contrast and retain more facial detail. Some of the Defendants' works added elements such as splashes of brightly colored paint. One work features Sid Vicious wearing sunglasses and is printed on a backdrop with the character Snoopy and palm trees. One is a mural. One was made out of broken vinyl records. PRSUF ¶ 25. Two works add a mole on the image of the face of Sid Vicious and an overlay of blonde hair in a different style. Some, but not all, of Guetta's seven works were sold. Defendants' Responses to Plaintiff's First Set of Interrogatories No. 2, Dkt. 57-1

### III.    Analysis

####     A.    Summary Judgment Standard

A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are material if they affect the outcome of the suit under the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the moving party will have the burden of proof on an issue at trial, that party must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *See Celotex Corp.*, 477 U.S. at 331. On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail if there is an absence of evidence to support the nonmoving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

Evidence presented by the parties at the summary judgment stage must be admissible. *See* Fed. R. Civ. P. 56(c)(2). In reviewing the record, the court does not make credibility determinations or weigh conflicting evidence. *Anderson*, 477 U.S. at 255. Rather, it draws all inferences in the light most favorable to the nonmoving party. *Id.*; *see also T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV12-00684 JAK (RZx) | Date | February 4, 2013 |
|---|---|---|---|
| Title | Dennis Morris v. Thierry Guetta, et al. | | |

"If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).

### B.     Copyright Infringement

The resolution of the cross-motions requires the determination of two issues: (i) whether Defendants infringed Plaintiff's copyright; and (ii) whether Defendants are protected by the fair use defense, even if their works otherwise infringed. To show copyright infringement, a claimant must show two things: (i) ownership of a valid copyright; and (ii) the copying of original elements. For the reasons stated below, there is no genuine issue of material fact that these two elements have been met. A party charged with copyright infringement may assert the affirmative defense of "fair use." Fair use is determined by the consideration of four statutory elements: (i) the purpose and character of the use; (ii) the nature of the copyrighted work; (iii) the amount and substantiality of the use; and (iv) the market effect. As with the infringement issue, here there are no disputed issues of fact relevant to the determination of fair use. For the reasons set forth below, Defendants cannot successfully advance this defense.

#### 1.     Legal Standard

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).

##### a)     Ownership of a Valid Copyright

"Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include . . . pictorial, graphic, and sculptural works. . . ." 17 U.S.C. § 102(a). "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. . . To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." *Feist Publications, Inc.*, 499 U.S. at 345. "When this articulation of the minimal threshold for copyright protection is combined with the minimal standard of originality required for photographic works, the result is that even the slightest artistic touch will meet the originality test for a photograph." *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076 (9th Cir. 2000).

> In assessing the "creative spark" of a photograph, we are reminded of Judge Learned Hand's comment that "no photograph, however simple, can be unaffected by the personal influence of the author." *Jewelers' Circular Pub. Co. v. Keystone Pub. Co.*, 274 F. 932, 934 (S.D.N.Y.1921). This approach, according to a leading treatise in the copyright area, "has become the prevailing view," and as a result, "almost any[ ]

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV12-00684 JAK (RZx) | Date | February 4, 2013 |
|---|---|---|---|
| Title | Dennis Morris v. Thierry Guetta, et al. | | |

photograph may claim the necessary originality to support a copyright merely by virtue of the photographers' [sic] personal choice of subject matter, angle of photograph, lighting, and determination of the precise time when the photograph is to be taken." 1 MELVIN B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 2.08[E][1], at 2–130 (1999).

*Id.* "[T]he fact that two original photographs of the same object may appear similar does not eviscerate their originality or negate their copyrightability." *Id.* at 1077 (a photograph of a non-copyrightable object is copyrightable, even taken without much artistry such that they "resemble many other . . . shots").

        b)      Copying of Original Elements of the Work

Section § 106 of the Copyright Act "provides that 'the owner of copyright . . . has the exclusive rights to do and to authorize' others to display, perform, reproduce or distribute copies of the work and to prepare derivative works." *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1152 (9th Cir. 2010). "The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights, described at 17 U.S.C. § 106." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 n.3 (9th Cir. 1989). Copying can be shown without a substantial similarity analysis when defendants "admit that they in fact copied," *Norse v. Henry Holt & Co.*, 991 F.2d 563, 566 (9th Cir. 1993), or when a "defendant has engaged in virtual duplication of a plaintiff's entire work," *Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989). *See also Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012) (evidence of direct copying makes a substantial similarity analysis irrelevant). A derivative work in violation of § 106 is created when a defendant takes a plaintiff's "original images" and "alter[s] them in various ways and fuse[s] them with other images and artistic elements into new works that were based on-i.e., derivative of-[plaintiff's] original images.' *Jarvis v. K2 Inc.*, 486 F.3d 526, 532 (9th Cir. 2007).

        2.      <u>Application</u>

Defendants advance a single argument in contending that there is a genuine issue of material fact concerning copyright infringement: There is insufficient evidence to establish Plaintiff's ownership of the copyright in the Photograph. This argument is unpersuasive. "Copyright in a work protected under this title vests initially in the author or authors of the work." 17 U.S.C. § 201. "As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989).

Plaintiff has declared that he took the Photograph. Morris Decl. ¶ 1-3, Dkt. 50. There is no contrary evidence in the record. Therefore, this fact is undisputed and established with respect to the present motions.[1] Because Plaintiff took the Photograph, the copyright in that image originally vests in him.[2]

---

[1] Defendants contend that Plaintiff did not answer discovery on the question of proof for his claim. But, Defendants did not bring a motion to compel in connection with such discovery, and did not respond to Plaintiff's present motion by seeking relief under Civil Rule 56(d). See Opp'n at 13-14, Dkt. 54. Thus, Defendant has not

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV12-00684 JAK (RZx) | Date | February 4, 2013 |
|---|---|---|---|
| Title | Dennis Morris v. Thierry Guetta, et al. | | |

There is no evidence in the record, or even any contention, that Plaintiff transferred his copyright. Therefore, there is no genuine issue of material fact regarding Plaintiff's ongoing ownership of the copyright in the Photograph. Defendants argue that the fact that Plaintiff has not produced the negative of the Photograph, notwithstanding that he claims to have it in his possession, creates doubt as to whether he possesses the negative. As a result, they contend that this creates doubt regarding Plaintiff's ownership of the copyright. This argument is without force. Possession of the negative is not a necessary component of establishing ownership in the copyright of a photograph.[3]

Plaintiff must also establish that there is no genuine issue of material fact that original elements of his work were copied. Defendants have admitted direct copying of the Photograph. Thus, they admit that the works were created by altering the Photograph.[4] Such an admission meets the definition of an infringing derivative work under *Jarvis*. 486 F.3d at 532.[5] Therefore there is no genuine issue of

---

shown why the claimed absence of discovery responses by Plaintiff should affect the consideration of the present motions.

[2] Plaintiff declares that in taking the photograph, he "select[ed] the subject matter, angle of photograph, exposure, composition, framing, location, and determination of the precise moment of taking the photograph." Morris Decl. ¶ 2, Dkt. 50. Under the Ninth Circuit standard in *Ets-Hokin*, this is sufficient originality as a matter of law. *See* 225 F.3d at 1077 (quoting *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 250 (1903) ("The least pretentious picture has more originality in it than directories and the like, which may be copyrighted.")).

[3] "Ownership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied. Transfer of ownership of any material object, including the copy or phonorecord in which the work is first fixed, does not of itself convey any rights in the copyrighted work embodied in the object; nor, in the absence of an agreement, does transfer of ownership of a copyright or of any exclusive rights under a copyright convey property rights in any material object." 7-2 Nimmer on Copyright § 202.

[4] Defendants have made this direct admission of creating works "which altered the Subject Photograph [Photograph]" regarding five of the seven identified works because only those five works were identified in the interrogatory response. *See* Defendants Responses of Plaintiff's First Set of Interrogatories No. 1, Dkt. 51-4. Accordingly, this admission does not directly address the two other challenged works: the mural work or the work made of broken records. However, it is undisputed that Guetta also created those works. DRSUF ¶¶ 9-10. These works look nearly identical to others. Although they are of a different scale and made of different materials, these changes do not alter the evidence of the use of the Photograph. Moreover, any insufficiency in the completeness of Defendants' admission does not preclude summary judgment for the reasons discussed in note 6, *infra.*

[5] Because Defendants admit to direct copying of the Photograph itself and because the Photograph is original enough to be copyrightable, Defendants *per se* copied original elements of the Photograph. This case is unlike cases where a copyrighted work was imitated and a court must distinguish whether the portions taken from the copyrighted work were original or not. It does not matter that other photographs of Sid Vicious in the same pose might have been taken and that such photographs would have been very similar to the Photograph. "Others are free to copy the original. They are not free to copy the copy." *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 249 (1903) ("The opposite proposition would mean that a portrait by Velasquez or Whistler was common property because others might try their hand at the same face."). Even in such cases where a plaintiff has only a "thin" copyright that extends to only his or her original contribution, with the unoriginal elements subtracted, a plaintiff is protected against "virtually identical copying." *See Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV12-00684 JAK (RZx) | Date | February 4, 2013 |
|---|---|---|---|
| Title | Dennis Morris v. Thierry Guetta, et al. | | |

material fact that Defendants copied original elements of Plaintiff's copyrighted work.[6]

**C. The Fair Use Defense**

    1. <u>The Legal Standard</u>

[F]air use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

    (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

    (2) the nature of the copyrighted work;

    (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

    (4) the effect of the use upon the potential market for or value of the copyrighted

---

Even under such an analysis, the Court would find that the copying is identical because Defendants' work involves use of the Photograph itself.

[6] Even without Defendants' admissions, there is an independent reason to find that there is no genuine issue of material fact as to direct copying. Defendants have admitted access to the Photograph, Defendant's Responses to Plaintiff's Request for Admissions, Set One, Dkt. 51-3, and there can be no genuine issue of material fact that the works are substantially similar for purposes of inferring copying. A "plaintiff may establish copying by showing that defendant had access to plaintiff's work and that the two works are 'substantially similar' in idea and in expression of the idea." *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996). "We apply a two-part test, the extrinsic test and the intrinsic test, to compare the similarities of ideas and expression in two works. The extrinsic test is an objective test based on specific expressive elements: the test focuses on "articulable similarities . . . in two works. The intrinsic test is a subjective test that focuses on 'whether the ordinary, reasonable audience would recognize the defendant's work as [based on] the plaintiff's work.'" *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) (citation omitted). "In applying the extrinsic test, we require a lower standard of proof on substantial similarity when a high degree of access is shown." *Smith,* 84 F.3d at 1218. "[If] the resemblance is so overwhelming as to mandate a finding of substantial similarity, the court should grant summary judgment to plaintiff." 3-12 Nimmer on Copyright § 12.10; *Segrets, Inc. v. Gillman Knitwear Co.*, 207 F.3d 56, 62 (1st Cir. Mass. 2000) ("While summary judgment for a plaintiff on these issues is unusual, . . . it is warranted on these facts,"); *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992) ("Further, even were such direct evidence of copying unavailable, the district court's decision could be upheld in this case on the basis that defendant Koons' access to the copyrighted work is conceded, and the accused work is so substantially similar to the copyrighted work that reasonable jurors could not differ on this issue."). The present case is governed by these principles.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV12-00684 JAK (RZx) | Date | February 4, 2013 |
| Title | Dennis Morris v. Thierry Guetta, et al. | | |

work.

> The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.

17 U.S.C. § 107.

The factors "all are to be explored and, and the results weighed together, in light of the purposes of copyright" in a "case-by-case analysis." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577-78 (1994). "The fair use doctrine thus 'permits [and requires] courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster.'" *Id.* at 577.

"Because fair use is an affirmative defense, Defendants bear the burden of proof on all of its factors." *Columbia Pictures Indus., Inc. v. Miramax Films Corp.*, 11 F. Supp. 2d 1179, 1187 (C.D. Cal. 1998) (citing *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997)). A grant of summary judgment can be predicated on the fair use doctrine and is reviewed de novo as a mixed question of law and fact. *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012). "Where material facts are not in dispute, fair use is appropriately decided on summary judgment." *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 800 (9th Cir. 2003).

    2.    Application

        a)    First Factor: Purpose and Character of the Use

            (1)    Legal Standard

                (a)    Transformativeness

> The central purpose of this investigation is to see, in Justice Story's words, whether the new work merely "supersede[s] the objects" of the original creation . . . or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is "transformative."

*Campbell,* 510 U.S. at 579.

"A use is considered transformative only where a defendant changes a plaintiff's copyrighted work or uses the plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation." *Wall Data Inc. v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769, 778 (9th Cir. 2006). "Although 'transformative use is not absolutely necessary for a finding of fair use,' *Campbell*, 510 U.S. at 579, 114 S.Ct. 1164, where the 'use is for the same intrinsic purpose as [the copyright holder's] . . . such use seriously weakens a claimed fair use.'" *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1117 (9th Cir. 2000). "As Justice Story put it: 'There must be real,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV12-00684 JAK (RZx) | Date | February 4, 2013 |
| Title | Dennis Morris v. Thierry Guetta, et al. | | |

substantial condensation of the materials, and intellectual labor and judgment bestowed thereon; and not merely the facile use of the scissors; or extracts of the essential parts, constituting the chief value of the original work.'" *Id.* However, "[i]t would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of [a work], outside of the narrowest and most obvious limits." *Campbell*, 510 U.S. at 582 (alterations in original).

(b) Other Factors

*(i) Commercial Use*

Although such transformative use is not absolutely necessary for a finding of fair use, . . . the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use. . . [T]he 'fact that a publication was commercial as opposed to nonprofit is a separate factor that tends to weigh against a finding of fair use.' . . . But that is all. . .

*Campbell*, 510 U.S. at 579, 585 (internal citations omitted).

*(ii) Good Faith*

"Also relevant to the character' of the use is the propriety of the defendant's conduct. . . Fair use presupposes 'good faith' and 'fair dealing.' . . . Fair use distinguishes between a true scholar and a chiseler who infringes a work for personal profit." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562-63 (1985) (internal citations and quotation marks omitted). The Supreme Court subsequently cast doubt on the relevance of good faith in a fair use analysis. See *Campbell*, 510 U.S. at 585 n.18. Furthermore, "[e]ven if good faith were central to fair use," "[i]f the use is otherwise fair, then no permission need be sought or granted. Thus, being denied permission to use a work does not weigh against a finding of fair use." *Id.*

*(iii) Justification*

If . . . the commentary has no critical bearing on the substance or style of the original composition, which the alleged infringer merely uses to get attention or to avoid the drudgery in working up something fresh, the claim to fairness in borrowing from another's work diminishes accordingly (if it does not vanish), and other factors, like the extent of its commerciality, loom larger. Parody needs to mimic an original to make its point, and so has some claim to use the creation of its victim's (or collective victims') imagination, whereas satire can stand on its own two feet and so requires justification for the very act of borrowing.

*Campbell*, 510 U.S. at 580-81. "[T]he broad principles of *Campbell* are not limited to cases involving parody" and "the satire/parody distinction may nevertheless be relevant to the application of these principles" outside the narrow framework of parody. *Blanch v. Koons*, 467 F.3d 244, 255 (2d Cir. 2006).

(2) Application in Prior Appropriation Art Cases

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV12-00684 JAK (RZx) | Date | February 4, 2013 |
|---|---|---|---|
| Title | Dennis Morris v. Thierry Guetta, et al. | | |

The Second Circuit has addressed the issue of the applicability of a fair use defense in appropriation art cases, including the proper application of the first fair use factor – the purpose and character of the use. *Blanch v. Koons*, 467 F.3d 244 (2d Cir. 2006), concerned a work created by an artist by using a portion of a photograph that had been published in a magazine advertisement for cosmetics. *Id.* at 248. Thus, Koons, the artist, used the portion of the photograph that showed a woman's legs. *Id.* He rotated and re-scaled this portion of the image, made some changes to its color and added a missing part of a heel. *Id.* He then used this modified image in a billboard-sized painting that featured multiple sets of women's legs along with photographs of baked goods set against a lush landscape. *Id.* at 247. The Second Circuit found this use transformative. *Id.* at 251-53. Koons took raw material and used it for a new purpose, having distinct creative or communicative objectives. *Id.* at 253.

In addition to its finding on transformativeness, the Second Circuit also analyzed the other subfactors of the purpose and character element: commercial use, bad faith, and justification for the use. The court found it less relevant that Koons attained a significant profit from his work, particularly because "the public exhibition of art is widely and we think properly considered to 'have value that benefits the broader public interest.'" *Id.* at 254. The court also found that there was no bad faith in failing to seek permission where the use was otherwise fair. *Id.* at 256. Finally, the court was satisfied with the explanation that Koons provided as to why he used an existing image – the portion of the magazine photograph – instead of creating his own. Koons declared that he wanted to use an actual magazine advertisement because it was an authentic image of the subject matter of his commentary – one directed to the culture and attitudes promoted by such magazine advertisements through fashion photography. *Id.* at 255. The court concluded that "Whether or not Koons could have created 'Niagara' [the defendant's work] without reference to 'Silk Sandals,' [the plaintiff's work.] we have been given no reason to question his statement that the use of an existing image advanced his artistic purposes." *Id.*

Conversely, in *Rogers v. Koons*, 960 F.2d 301 (2d Cir. 1992), which predated *Campbell*, the Second Circuit rejected a finding of fair use, largely based on its analysis of the first fair use factor. At issue in *Rogers* was a sculpture that recreated in very specific detail a photograph taken by the plaintiff. One of the few differences between the photograph and the sculpture was that the sculpture, unlike the photograph, was in color and in the sculpture, the puppies that appeared in the photograph were painted blue. *Id.* at 305. The Second Circuit found that the first factor weighed against fair use because, "even given that "String of Puppies" is a satirical critique of our materialistic society, it is difficult to discern any parody of the photograph "Puppies" itself. . . The circumstances of this case indicate that Koons' copying of the photograph "Puppies" was done in bad faith, primarily for profit-making motives, and did not constitute a parody of the original work." *Id.* at 310.

The ability of an artist to make "similar statements through other means about society" does not necessarily preclude the artist from using a means that "conveys these messages in a particular way that is ripe for social comment," because the court does "not make judgments about what objects an artist should choose for their art." *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 802, n.7 (9th Cir. 2003) (discussing the use of Barbie dolls in photographs of tableaus that undermined the traditional image of a Barbie doll). However, "[i]f an infringement of copyrightable expression could be justified as fair use solely on the basis of the infringer's claim to a higher or different artistic use . . . there would be no practicable boundary to the fair use defense." *Rogers*, 960 F.2d at 310 (discussing

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV12-00684 JAK (RZx) | Date | February 4, 2013 |
|---|---|---|---|
| Title | Dennis Morris v. Thierry Guetta, et al. | | |

need for commentary on original work "otherwise there would be no real limitation on the copier's use of another's copyrighted work to make a statement on some aspect of society at large"); *accord Cariou v. Prince*, 784 F. Supp. 2d 337, 348-49 (S.D.N.Y. 2011) ("The Court therefore declines Defendants' invitation to find that appropriation art is *per se* fair use, regardless of whether or not the new artwork in any way comments on the original works appropriated. Accordingly, [defendant's] Paintings are transformative only to the extent that they comment on the Photos; to the extent they merely recast, transform, or adapt the Photos, [defendants] Paintings are instead infringing derivative works.").

*Blanch*, 467 F.3d 244, provides a clear standard that bridges these two requirements: An artist is not required to compromise his or her artistic vision merely because the artist could have made a similar statement in a non-infringing way. However, the artist must provide a sufficient justification for using another's copyrighted material in effecting the artist's vision. Such a justification could be based on making a commentary on the material used in the other work, *i.e.,* parody. It could also be based on a clear articulation of how using the material served the artist's objective beyond merely saving the artist time or effort, *i.e.,* satire.[7]

(3)     Application

Under *Campbell* and *Blanch*, it is clear that a commercial aspect to an artistic work is not dispositive of whether there is a fair use. Thus, even a commercial use is appropriate if it is sufficiently transformative. Furthermore, that a party does not seek permission to use a copyrighted work does not prevent a finding of fair use where the use is otherwise fair. Accordingly, the key issues in the application of the first fair use factor are whether Defendants' use was transformative and justified.

An independent review of Defendants' works shows that they are not sufficiently transformative under the foregoing standards. Thus, it is not apparent that Defendants' works add something new, have a further purpose or are of a different character due to a new expression, meaning, or message. The Photograph is a picture of Sid Vicious making a distinct facial expression. Defendants' works are of Sid Vicious making that same expression. Most of Defendants' works add certain new elements, but the overall effect of each is not transformative; Defendants' works remain at their core pictures of Sid Vicious. Defendants have not argued that their works serve any utility beyond being art works with a potential to be decorative and to convey meaning. And, a review of the Defendants' works does not show that they convey any sufficient new meaning that has transformed the Photograph in any

---

[7] Defendants cite to the search engine line of cases (known as the "thumbnail cases"), *see, e.g.*, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), for the proposition that they need not be commenting on the original work, even in part, to be deemed to be making an acceptable fair use under the first fair use factor. Fair use does not necessarily require a comment on the original; however, where there is no comment on the original, a justification for the use is necessary. The thumbnail cases are not analogous to the circumstances here because use as part of a search engine provides a new and separate function and use of the images is necessary to the effectiveness of the search engine. Here, Defendants do not identify any independent purpose for the use of the Photograph other than for making art. Defendants' works are undisputedly works of art with no functional purpose aside from their potential to be decorative and to convey meaning.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV12-00684 JAK (RZx) | Date | February 4, 2013 |
|---|---|---|---|
| Title | Dennis Morris v. Thierry Guetta, et al. | | |

significant manner. In short, the transformativeness is not akin to what was present in, or sufficient to satisfy the standards of, *Blanch*, 960 F.2d at 253.

In making a finding that Defendants' work is not sufficiently transformative, the Court need not rely on its own judgment. Such a finding is consistent with the record before the Court. Defendants offered no evidence on the issue of how and why the work could be considered transformative prior to their own reply to their motion. New evidence submitted as part of a reply is improper.[8] Furthermore, the absence of any stated justification in the record prior to Defendant's reply to its own motion is a clear example of a post-hoc rationalization of the justification for copying. A court need not accept a defendant's explanation for use of and extent of copying of a plaintiff's work and can make an independent assessment of its persuasiveness. *See Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997) ("We completely agree with the district court that Penguin and Dove's fair use defense is 'pure shtick' and that their post-hoc characterization of the work is 'completely unconvincing.'"). The Declaration discusses only a subset of the identified works at issue with any specificity. *See* Guetta Decl., Dkt. 60-1. Moreover, the explanations offered for the new message Guetta intended to convey through his works are unpersuasive. *See, e.g., id.* at ¶ 7 ("I created the mural (with color) in particular because it was larger than life, like Sid Vicious, and I wanted to give him the respect it seemed like he did not get in life."). Finally, to the extent that Defendants' counsel sought to suggest at the hearing on the motion that no evidence about transformativeness was submitted prior to the reply because Defendants considered the transformative nature of the work self-evident, that position is not convincing.

The record here also shows that the Defendants' use of the Photograph was not justified. This is an independent basis for determining that the purpose and character of the use factor does not support a finding of fair use.

As a threshold matter, there has been no evidence presented that Defendants' works were intended to make any kind of commentary on the Photograph itself. Accordingly, Defendants must establish some other justification for use of the Photograph.

Defendants' proffered explanation for creating the work focuses on a desire to make a commentary on Sid Vicious's persona and on the nature celebrity generally. *See* Guetta Decl., Dkt. 60-1. This rationale does not provide a sufficient justification for using the Photograph. Moreover, as noted, the Guetta Declaration, in which this justification was first proffered, was only submitted with Defendants' reply brief.

Putting aside the foregoing deficiency, the Guetta Declaration is still insufficient to create a triable issue as to fair use. The Guetta Declaration does not provide any explanation or justification for why the use

---

[8] To the extent that a reply brief presents new information, it is improper because the opposing party is deprived of the opportunity to respond. *Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1273 n.3 (9th Cir. 1993) (striking parts of reply brief presenting new information); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) ("[w]here new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond.").

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV12-00684 JAK (RZx) | Date | February 4, 2013 |
|---|---|---|---|
| Title | Dennis Morris v. Thierry Guetta, et al. | | |

of the Photograph was necessary or how it served Guetta's purpose better than an alternative means that did not rely on a copyrighted work. *See id.* Defendants in effect argue that any use of copyrighted material in appropriation art is *per se* fair use. But, this is the precise argument that the *Cariou* court rejected. 784 F. Supp. 2d at 348-49. It is not a requirement of fair use that a defendant prove it was impossible to make his work in a non-infringing way. But it is necessary for a defendant to provide evidence that the challenged use had a justification and artistic purpose beyond merely saving a defendant some effort. *See Campbell*, 510 U.S. at 580-81. This is not to say that a defendant's works need to meet some standard of artistry. Rather, it means that there must be some showing that a challenged work is a commentary on the copyrighted one, or that the person who created the challenged work had a justification for using the protected work as a means of making an artistic statement.

Accordingly, the first factor does not support the fair use defense because the record does not support a finding that Defendants' use was sufficiently transformative or justified.

        b)       Second Factor: Nature of the Copyrighted Work

            (1)     Legal Standard

The second statutory factor, "the nature of the copyrighted work," § 107(2), draws on Justice Story's expression, the "value of the materials used." *Folsom v. Marsh*, 9 F.Cas., at 348. This factor calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied. *See, e.g., Stewart v. Abend*, 495 U.S., at 237-238, 110 S.Ct., at 1768-1769 (contrasting fictional short story with factual works); *Harper & Row*, 471 U.S., at 563-564, 105 S.Ct., at 2231-2233 (contrasting soon-to-be-published memoir with published speech); *Sony*, 464 U.S., at 455, n. 40, 104 S.Ct., at 792, n. 40 (contrasting motion pictures with news broadcasts); *Feist*, 499 U.S., at 348-351, 111 S.Ct., at 1289-1291 (contrasting creative works with bare factual compilations).

*Campbell*, 510 U.S. at 586.

"[P]hotographs taken for aesthetic purposes, are creative in nature . . . ." *Elvis Presley Enterprises, Inc. v. Passport Video*, 349 F.3d 622, 629 (9th Cir. 2003) *overruled on other grounds as stated in Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.,* 654 F3d 989, 995 (9th Cir. 2011) (per curiam). "Simply because a photo documents an event does not turn a pictorial representation into a factual recitation of the nature referenced in *Harper & Row.* Photos that we now regard as iconic often document an event . . . ." *Monge*, 688 F.3d at 1177 (describing "point-and-shoot" photographs documenting an event "not highly artistic in nature" but still "marginally creative works").

An unpublished photograph is given greater protection under this factor, *id.* at 1178, but not having the enhanced protection available for an unpublished work does not defeat this factor weighing in a plaintiff's favor. *See Perfect 10, Inc.*, 508 F.3d at 1167.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV12-00684 JAK (RZx) | Date | February 4, 2013 |
|---|---|---|---|
| Title | Dennis Morris v. Thierry Guetta, et al. | | |

"[T]his factor typically has not been terribly significant in the overall fair use balancing" including situations where the work was creative and publically disseminated. *Dr. Seuss Enterprises, L.P.*, 109 F.3d at 1402; *see also Mattel, Inc.*, 353 F.3d at 803.

(2)  Application

The Photograph is at least marginally creative under the standard in *Monge*, 688 F.3d at 1177, even if it is, as Defendants contend, more documentary than aesthetic. That this standard is met is confirmed because the Photograph is a posed portrait. It is undisputed that it has been previously published. Accordingly, this factor weighs at least slightly against a finding of fair use.

c)  Third Factor: Amount and Substantiality of Portion Used

(1)  Legal Standard

> The third factor asks whether "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," § 107(3) (or, in Justice Story's words, "the quantity and value of the materials used," *Folsom v. Marsh*, *supra*, at 348) are reasonable in relation to the purpose of the copying. Here, attention turns to the persuasiveness of a parodist's justification for the particular copying done, and the enquiry will harken back to the first of the statutory factors, for, as in prior cases, we recognize that the extent of permissible copying varies with the purpose and character of the use.

*Campbell*, 510 U.S. at 586-87.

"[A] taking may not be excused merely because it is insubstantial with respect to the *infringing* work. As Judge Learned Hand cogently remarked, 'no plagiarist can excuse the wrong by showing how much of his work he did not pirate.' . . . Conversely, the fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 565 (1985). "Qualitatively, the minimal cropping of each picture demonstrates that the 'heart' of each individual copyrighted picture was published." *Monge*, 688 F.3d at 1178.

In certain circumstances, use of even the entire copyrighted image can be necessary such that the factor is neutral. *Perfect 10, Inc.*, 508 F.3d at 1167-68 (discussing the need of search engines to use the entire image to be effective).

(2)  Application

The artistic core of the Photograph is the facial expression and posture of Sid Vicious. It is also used as the central element in all of Defendants' work. But, even if Defendants had not used it as the central element of the Guetta works, the fact that Defendants added other elements in some of the works is

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV12-00684 JAK (RZx) | Date | February 4, 2013 |
|---|---|---|---|
| Title | Dennis Morris v. Thierry Guetta, et al. | | |

irrelevant. Thus, the analysis looks to what has been taken, not what has been added. Furthermore, the portion of the Photograph that Defendants used is qualitatively substantial; it comprises the majority of both the original and the copies. It is undisputed that Defendant cropped the bottom part of the picture and the background. However, it is evident that those elements were not essential features of the Photograph. The only issue is whether the facial expression and pose, which is undisputedly something Sid Vicious did without Plaintiff's direction, is a protected part of the photograph. The Ninth Circuit has adopted the view that the "personal choice of subject matter, angle of photograph, lighting, and determination of the precise time when the photograph is to be taken," *Ets-Hokin*, 225 F.3d at 1076, are aspects that are original enough to be copyrightable.

Because Plaintiff made the decision to take a photograph of Sid Vicious at that precise moment, the literal elements of that photograph belong to Plaintiff. Defendants' argument that Plaintiff has no right to his photograph of Sid Vicious because Plaintiff did not direct Sid Vicious to strike that pose, is unconvincing. To be sure, in *Burrow-Giles*, the court considered, among other things, the photographer's role in "arranging the subject" and "suggesting and evoking the desired expression," 111 U.S. 53, 60 (1884). And, a nature photographer cannot preclude others from emulating a work. *See Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444, 453 (S.D.N.Y. 2005) (a photograph of a salmon jumping into a bear's mouth is original and protected, but does not preclude other photographers from attempting to capture a similar image). But, as discussed as part of the Court's infringement analysis,[9] although Defendants stripped the Photograph of some of its more detailed elements, Defendants still relied on, and used the Photograph itself, to create their works and could not have done so without the Photograph. Indeed, the many images of Sid Vicious that Defendants have presented in support of their motion undermine their claim. *See* Bentz Decl., Exh. C, Dkt. 47-3. The exhibit includes many photographs of Sid Vicious, but does not include any showing of the same facial expression that was captured in the Photograph. Defendants' exhibit highlights how the Photograph has a special quality that makes it distinct and unique when compared to others of Sid Vicious. Accordingly, this factor weighs against fair use.

### d) Fourth Factor: Market Effect

#### (1) Legal Standard

The fourth fair use factor is "the effect of the use upon the potential market for or value of the copyrighted work." § 107(4). It requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also "whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market" for the original. . . The enquiry "must take account not only of harm to the original but also of harm to the market for derivative works."

No "presumption" or inference of market harm that might find support in *Sony* is applicable to a case involving something beyond mere duplication for commercial

---

[9] *See* note 5, *supra*.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV12-00684 JAK (RZx) | Date | February 4, 2013 |
|---|---|---|---|
| Title | Dennis Morris v. Thierry Guetta, et al. | | |

> purposes. *. .* But when, on the contrary, the second use is transformative, market substitution is at least less certain, and market harm may not be so readily inferred.

*Campbell*, 510 U.S. at 590 (citations omitted). The market for potential derivative uses includes only those that creators of original works would in general develop or license others to develop. *Id.* at 592.

> [C]ommercial use may tip the scale toward market harm, but like the other factors, it 'may be addressed only through a 'sensitive balancing of interests.' . . . [A] presumption of market harm 'makes common sense[ ] when a commercial use amounts to mere duplication of the entirety of an original.' . . . Thus, the market harm analysis is affected by whether the harm is caused by commercial use of a mere duplicate or by commercial use post-transformation.

*Monge*, 688 F.3d at 1180-81. "The important difference is not whether or not a work is 'mildly transformative,' but whether it 'functioned as a market replacement.'" *Id.* at 1182-83.

> The statute by its terms is not limited to market effect but includes also "the effect of the use on the *value* of the copyrighted work." 17 U.S.C. § 107(4) (emphasis added). As *Sony* states, "[e]ven copying for noncommercial purposes may impair the copyright holder's ability to obtain the rewards that Congress intended him to have." *Sony,* 464 U.S. at 450, 104 S.Ct. 774. Those rewards need not be limited to monetary rewards; compensation may take a variety of forms. *Id.* at 447 n. 28, 104 S.Ct. 774 ("The copyright law does not require a copyright owner to charge a fee for the use of his works. . . . It is not the role of the courts to tell copyright holders the best way for them to exploit their copyrights").
>
> Even an author who had disavowed any intention to publish his work during his lifetime was entitled to protection of his copyright, first, because the relevant consideration was the "potential market" and, second, because he has the right to change his mind.

*Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1119 (9th Cir. 2000).

"The Supreme Court declared in *Harper & Row* that '[t]his last factor is undoubtedly the single most important element of fair use.'" *Monge*, 688 F.3d at 1180. "The fact that the secondary use does not harm the market for the original gives no assurance that the secondary use is justified. Thus, notwithstanding the importance of the market factor, especially when the market is impaired by the secondary use, it should not overshadow the requirement of justification under the first factor, without which there can be no fair use." *Worldwide Church of God*, 227 F.3d at 1120 (quoting Pierre N. Leval, *Toward a Fair Use Standard,* 103 Harv. L. Rev. 1105, 1124 (1990)). If potential harm to a plaintiff's market remains hypothetical, the factor is neutral and favors neither party. *Perfect 10, Inc.*, 508 F.3d at 1168.

      (2)  Application

The record does not clearly show a harm to the market for, or value of, the Photograph, and the amount

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV12-00684 JAK (RZx) | Date | February 4, 2013 |
|---|---|---|---|
| Title | Dennis Morris v. Thierry Guetta, et al. | | |

of harm and potential harm based on the nature of the market is disputed. However, even assuming there was no harm to the market, this would not excuse an unjustified use under *Worldwide Church of God*. 227 F.3d at 1120. Therefore, any dispute over the market effect is immaterial because a lack of harm would not change the determination of an unjustified use under the first factor.

*          *          *

For the foregoing reasons, Defendants cannot establish a fair use defense. The first and third factors strongly support Plaintiff, the second factor slightly supports Plaintiff, and the fourth factor does not strongly support Defendant. As noted by another court in a case with similar issues, "To permit one artist the right to use without consequence the original creative and copyrighted work of another artist simply because that artist wished to create an alternate work would eviscerate any protection by the Copyright Act. Without such protection, artists would lack the ability to control the reproduction and public display of their work and, by extension, to justly benefit from their original creative work." *Friedman v. Guetta*, No. CV 10-00014 DDP JCX, 2011 WL 3510890, at *7 (C.D. Cal. May 27, 2011).

### IV.   Conclusion

For the foregoing reasons, Plaintiff's motion for partial summary adjudication is granted and Defendants' motion for summary judgment is denied.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer   ak